LATIMER v. WOOD et al.

(Circuit Court of Appeals, Eighth Circuit. March 23, 1896.)

No. 684.

BANKS AND BANKING—INSOLVENCY—ACCOMMODATION NOTES.

    Complainants, on the request of a national bank needing funds, signed an accommodation note for $10,000, payable to its order, with the understanding that it would discount the same, and use the proceeds in its business. The bank at the same time agreed to place to the credit of complainants on its books an amount equal to the proceeds of the note, complainants stipulating that they would not check against this credit except to pay the note or to reimburse themselves for paying it. The credit was accordingly made, and the bank, after continuing business for some time, failed, and complainants were compelled to pay the note. They thereafter recovered a judgment at law against the bank's receiver for the amount paid to take up the note, and then sued in equity for the amount placed to their credit according to the agreement. *Held,* that they were not entitled to two judgments for the same debt, and to dividends on both judgments until one of them was satisfied, and that the bill must, therefore, be dismissed.

Appeal from the Circuit Court of the United States for the Western District of Missouri.

The First National Bank of Sedalia, on the 20th day of July, 1893, being in need of funds to use in its banking business, requested of H. W. Wood and E. G. Cassidy, the appellees (and one E. A. Phillips, who, having passed out of the case, will not be further mentioned), the loan of their names and credit to borrow $10,000, which request was acceded to, and the appellees made a promissory note payable to the order of the bank for the sum of $10,000, with the understanding that the note should be indorsed and discounted by the bank, and the proceeds thereof used by the bank for its own purposes. The note was discounted with the Commercial Bank of St. Louis, and the proceeds used by the Sedalia National Bank. At the time of the making of the accommodation note by the appellees it was agreed between them and the bank that the bank would place to the credit of the appellees on the books of the bank a credit equal in amount to the proceeds realized from the discount of the note, and this was done, the credit amounting to $9,802.22. It was stipulated that the appellees were not to check against this credit except to pay the note, or reimburse themselves for paying it. The note was twice renewed under the same agreements, and for the same purposes, and, the bank failing to pay the last renewal thereof at maturity, it was paid by the appellees on the 25th day of May, 1894. The bank failed on the 4th day of May, 1894, and W. A. Latimer, the appellant, was duly appointed receiver thereof by the comptroller of the currency on the 10th day of May, 1894. The appellees recovered a judgment at law against the receiver for the amount paid by them to take up the note, and interest thereon, amounting to the sum of $10,675.24. In this suit the appellees seek a decree against the receiver for the amount of the credit in their favor standing on the books of the bank, placed there under the agreement. The lower court rendered a decree that: "The complainants have and recover the sum of $9,802.22 against the respondents as a special

claim against the estate in the hands of the respondent W. A. Latimer, as receiver of the First National Bank of Sedalia, which said sum is to be paid by said receiver out of the assets in his hands to the extent and until the sum realized thereon, in connection with any dividends paid by said receiver on the judgment between the above-named parties in the action at law, this day entered of record in this court, shall be equal to and be in satisfaction of the sum of $10,675.24 and the interest accrued thereon from the date of said judgment at law; the object, intent, and purport of this decree being that the complainants, the said H. W. Wood and E. G. Cassidy, shall receive in the distribution of said estate by said receiver a pro rata dividend with other creditors of said estate in both the said judgment at law and under this decree to the extent of the sum sufficient to satisfy the amount of said judgment at law, to wit, the said sum of $10,675.24, and said interest thereon." From this decree the receiver appealed to this court.

William S. Shirk, for appellant.

George P. B. Jackson, for appellees.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The single question in the case is: Are the appellees entitled to two judgments for the same debt, and to dividends on both judgments until a sufficient sum has been received to discharge one of them? The appellees, as the makers of the accommodation note, were, of course, entitled to a judgment for the amount paid to take up that note, and interest thereon. But we do not perceive upon what ground they can also recover a judgment for the amount of the credit on the books of the bank for that same debt. When the appellees made the note for the accommodation of the bank, the law settled the respective rights and duties of the parties. As between the makers of the note and the bank, the former were sureties for the latter. It was the duty of the bank to pay the note at maturity, and if it failed to do so, and the sureties paid it, the bank thereby became debtor to the sureties in the sum paid. Independently of any special agreement to that effect, when the sureties paid the note it became the duty of the bank to credit them on its books with the sum so paid for its account, and to honor their checks drawn against the same. The only variation from the obligations the law imposed on the bank was that, instead of waiting until the sureties had paid the note before giving them credit therefor, the credit was given at the inception of the transaction, but upon the distinct agreement that it was not to be drawn against until the sureties had paid the note, or any renewal thereof, or "the bank made default in the payment thereof," so that the credit given the sureties on the books of the bank was merely anticipating the credit to which they would be entitled upon the payment of the note. It was to become effective only after the note had actually been paid by the sureties, or the bank had made default in the payment thereof; and it can have no other or greater force or effect for any purpose than if the credit had been placed there after the payment of the note by the sureties. It was suggested in argument that the sureties wanted this credit on the books of the bank to offset their apparent indebtedness to the bank on the accommodation note. This is not improbable, as it would seem that the parties

would scarcely anticipate that the bank would continue to do business and honor checks when it was unable to protect its sureties, and after letting its commercial paper go to protest. But, whatever may have been the motive for giving the credit, it represents nothing different from the cause of action which accrued to the sureties by paying the note. It was made without any consideration. At the time it was made, no money was paid to the bank, and no money had been paid by the sureties on account of the bank. It was not a real, but a fictitious, credit. It was, indeed, a false and fraudulent entry, if not one for which the officers of the bank could be held criminally liable. The parties to the transaction knew the accommodation note was given to raise money for the use of the bank, and the money thus obtained was so used. The money obtained by the bank by negotiating the note was the money of the bank, and not the money of the accommodation makers of the note, and any credit given them therefor, before they paid the note, was premature, and without any consideration. This credit did not represent a trust fund, because there was no such fund. It represented no fund whatever. There can be no trust where there is nothing to bottom the trust upon. It was not a security, collateral or otherwise, for the same reasons, and for the further reason that it was not so intended by the parties; and the rule applicable to the case of a creditor holding two securities for the same debt does not apply. The decree of the circuit court is reversed, and the cause remanded, with instructions to dismiss the bill.